UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                Plaintiff,

-against-

PACE CHESIR, NEW YORK STATE
DEPARTMENT OF TAX AND FINANCE, and
MORTON COLEMAN, M.D.,

                Defendants.
-----------------------------------------------------------x

**MEMORANDUM & ORDER**
08-CV-2552 (ENV)(SMG)

Vitaliano, D.J.

    On January 16, 2015, after years of litigation between the government and defendant Pace Chesir over a default judgment arising from his unpaid tax liabilities, the Court, upon the representation that Chesir had fully satisfied a settlement with the government and that no party objected, entered <u>vacatur</u> of its prior order approving the foreclosure sale of Chesir's home to would-be purchaser Hyman Chabbott. That was, it was thought, to be the final chapter in this tumultuous saga. Yet, the same day, Chabbott filed a letter, seeking to intervene and to oppose <u>vacatur</u>. The Court granted Chabbott's request to intervene, and conducted a hearing on intervenor's opposition. For the reasons that follow, the Court now reinstates its order approving sale of the foreclosed property to Chabbott and directing Chesir to vacate the foreclosed premises.

## Background

    The salient facts have been discussed in prior decisions of the Court and will not be repeated here, except for purposes of clarity. <u>See</u>, <u>United States v. Chesir</u>, 862 F. Supp. 2d 286 (E.D.N.Y. 2012), <u>aff'd</u>, 526 F. App'x 60 (2d Cir. 2013). After denying Chesir's motion to vacate the default judgment, the Court entered an order approving the foreclosure sale of Chesir's home.

Dkt. No. 43. In accordance with that order, on May 7, 2012, the court-appointed receiver and Chabbott entered into a contract of sale for Chesir's foreclosed property. Int. Br., Dkt. No. 88, at 3. The purchase price was $999,999. Id. Chesir, however, appealed the order denying his motion to vacate the default judgment, and the sale was stayed pending that appeal. Dkt. No. 53. On August 23, 2013, the Second Circuit affirmed the order denying Chesir's motion to vacate the default judgment, see Chesir, 526 F. App'x 60, and, as a consequence, on October 10, 2013, the Court, over Chesir's objection, lifted the stay and directed the receiver to consummate the sale. See Dkt. No. 60. Soon thereafter, in spite of a series of dilatory filings by Chesir, see, e.g., Dkt. Nos. 61, 63 and 64, the Court entered a revised order approving the sale to Chabbott, directing conveyance of a quitclaim deed to him and ordering Chesir and any other occupants of the foreclosed property to vacate by July 31, 2014. See Revised Order to Approve Sale of Property and Order Directing All Occupants Residing at 911 Avenue N Brooklyn, New York, to Vacate Premises, Dkt. No. 68.

His other delaying tactics having failed, on July 23, 2014, Chesir took the logical next step: he filed for Chapter 13 bankruptcy protection. Dkt. No. 72. Of course, with this filing, the automatic stay that shields all debtors in bankruptcy took effect, providing yet another reprieve from the ordered foreclosure of his property. See 11 U.S.C. § 362. With the clock ticking, on January 13, 2015, the bankruptcy court dismissed the Chapter 13 case for failure to meet and comply with certain statutory requirements, see Dkt. No. 86-4. But, not wasting time in the interim, Chesir had already managed finally, it was thought, to negotiate and pay in full a settlement of his tax liabilities with the government. Accordingly, on January 16, 2015, the government filed a notice of satisfaction of judgment, providing that "the money judgment for personal liability entered against Defendant Pace Chesir on August 3, 2011 . . . has been satisfied

pursuant to a settlement agreement" and, therefore, authorizing the Clerk of Court to "cancel [the] personal liability judgment of record" against Chesir. See Satisfaction of Judgment Against Pace Chesir Personally, Dkt. No. 75 at 1-2. Importantly, however, the notice also provided that "[n]othing herein shall be construed to alter or affect the legal rights of any parties with respect to the Court's order approving the sale of the [foreclosed] property . . . and the United States takes no position in respect thereto." Id.[1]

On January 16, 2015, having reached closure with the government, Chesir moved to vacate the order approving the sale of his home. Dkt. No. 77. Upon the representation that no party opposed the motion, the Court granted it the following business day, January 20, 2015. That same day, Chabbott filed his letter opposing vacatur and seeking to intervene. See Dkt. No. 78.

All in all, there is no general dispute as to any material fact. What is left for the Court's determination is plainly a question of law.

## Standard of Review

Federal Rule of Civil Procedure 60(b)(5) allows a party to seek relief from a final judgment when "events arise that were not previously considered by the court." DeWeerth v. Baldinger, 38 F.3d 1266, 1270 (2d Cir. 1994). To obtain relief under that section, a party must show that there is a "material, relevant change in fact or law[.]" Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp., 222 Fed. App'x 25, 26-27 (2d Cir. 2007) (citing DeWeerth v. Baldinger, 38 F.3d 1266, 1272 (2d Cir. 1994); Schildhaus v. Moe, 335 F.2d 529,

---

[1] The notice also provided that "[n]othing herein shall waive the United States' right to collect an additional $15,000 currently held in escrow pursuant to the terms of the settlement agreement under which that sum shall be paid to the receiver if the sale is cancelled and shall be paid to the United States in the event that the Court's order of sale is not set aside or vacated." Id.

3

530 (2d Cir.1964)). While motions for reconsideration of a final judgment are "generally not favored" and are "properly granted only upon a showing of exceptional circumstances," Pichardo v. Ashcroft, 374 F.3d 46, 55 (2d Cir. 2004) (quoting United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001)), district courts should apply a "flexible standard" in evaluating a Rule 60(b) motion. Rufo v. Inmates of Suffolk Cty. Jail, 502 U.S. 367, 380, 112 S. Ct. 748, 758, 116 L. Ed. 2d 867 (1992). In all cases, the party seeking relief has the burden of proving such circumstances. Pichardo, 374 F.3d at 55 (internal citations omitted). Generally, these same guiding principles apply whether the motion seeks to set aside a judgment or an order. See Fed.R.Civ.P. 60(b).

## Discussion

Chabbott interposes three arguments in opposition to Chesir's motion to vacate the order of sale entered as a result of the default judgment in favor of the government: first, that Chesir does not possess a right of redemption of his property; second, that allowing the sale to proceed will not result in two satisfactions of the same judgment, as Chesir claims; and third, that equitable considerations militate in favor of upholding the sale.

Chesir's claimed right of redemption presents a fundamental question. He contends that it entitles him, as a matter of law, to reclaim his property in spite of the now-consummated foreclosure sale. Since "property interests," including the right of redemption, "are created and defined by state law," In re Canney, 284 F.3d 362, 370 (2d Cir. 2002) (quoting Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)), that fundamental question is one of New York law. Not distinguishing between the more ordinary home foreclosures and tax lien foreclosures, New York recognizes the right of property redemption in the context of tax lien foreclosures. See LFJ Realty Co. v. Bank of New York, 31 Misc. 3d 1217(A), 929 N.Y.S.2d 200

4

(Sup. Ct., Kings Cty. 2011) ("[A] tax lien . . . merely serves as security to insure payment of a debt, and . . . [a]s redemption satisfies the debt, there is no reason to hold a foreclosure sale once redemption occurs."); Weiss v. Stone, 129 N.Y.S.2d 525, 527 (Sup. Ct. 1954) (upholding the right of redemption in a foreclosure action arising from a tax lien). The crucial question, therefore, is whether Chesir's right of redemption outlived the court-approved sale of his foreclosed property.

Chesir scrambles for cover under an ancient decision rendered by New York's high court, Nutt v. Cuming, 155 N.Y. 309, 313, 49 N.E. 880 (1898), which held that a mortgagor of foreclosed property retains an equity of redemption until "the sale is made, confirmed, *and conveyance delivered.*" (emphasis added). With conveyance of the title and deed to Chabbott not yet having occurred, Chesir contends that his equitable right of redemption remains viable. There is, however, no viability to the ancient outlier precedent upon which Chesir relies. Whether or not formally and expressly, it is clear that decades of modern New York case law have overruled Nutt with respect to the pertinent principle Chesir advances. As the Second Circuit has held, "[U]nder New York law, the foreclosure sale effectively cut[s] off [a lienor's] legal title in the foreclosed premises." In re Rodgers, 333 F.3d 64, 69 (2d Cir. 2003) (internal citations omitted); see also NYCTL 1999-1 Trust v. 573 Jackson Ave. Realty Corp., 13 N.Y.3d 573, 579, 921 N.E.2d 195, 199, 893 N.Y.S.2d 503 (2009) ("the equity of redemption . . . allows property owners to redeem their property by tendering the full sum at any point before the property is actually sold at a foreclosure sale."); Norwest Mortgage, Inc. v. Brown, 35 A.D.3d 682, 683, 830 N.Y.S.2d 158, 159 (2d Dep't 2006) ("A mortgagor or other owner of the equity of redemption of a property subject to a judgment of foreclosure and sale may redeem the mortgage at any time prior to the foreclosure sale . . . . Generally, once the sale takes place, however, the

right to redeem is extinguished, as a matter of law.") (internal citations omitted); United Capital Corp. v. 183 Lorraine St. Associates, 251 A.D.2d 400, 400, 675 N.Y.S.2d 543, 544 (2d Dep't 1998) ("[T]he foreclosure sale . . . extinguished, as a matter of law, the appellants' purported rights to redeem the subject property.").

Plainly, then, time has passed by Chesir's precedent. With or without actual conveyance of title and deed to the purchaser at the foreclosure sale, the happening of the sale is enough under New York law to extinguish any right of redemption, legal or equitable, that the mortgagor or lienor may have had in the foreclosed property. See NYCTL 1996-1 Trust v. Moore, 51 A.D.3d 885, 886, 859 N.Y.S.2d 212, 213 (2d Dep't 2008) ("[R]edemption is not permitted after a foreclosure sale, whether or not a deed has actually been delivered to the sale purchaser."); see also In re Rodgers, 333 F.3d at 69 ("[D]elivery of the deed [is] a ministerial act" that does not affect title to, or interest in, the foreclosed property); GMAC Mortgage Corp. v. Tuck, 299 A.D.2d 315, 316, 750 N.Y.S.2d 93, 95 (2d Dep't 2002) ("[T]he defendants' claim that they had a right of redemption up until the time the deed was delivered to the purchaser at the foreclosure sale is without merit."). Even more problematic for Chesir's claim, under New York law, "[o]nce the right to redeem is lost, it cannot be revived, even by court order." Norwest Mortgage, Inc. v. Brown, 35 A.D.3d 682, 684, 830 N.Y.S.2d 158, 159 (2d Dep't 2006). These principles of law control the undisputed facts: the receiver has already effectuated a sale of Chesir's property to Chabbott pursuant to a then-controlling order of the Court. Therefore, the execution of that sale extinguished any right of redemption that Chesir may have claimed, and the after-the-fact settlement that Chesir negotiated with the government does not constitute a "material change in fact" justifying vacatur of the order authorizing the foreclosure sale. Fendi, 222 Fed. App'x at 26-27. And, more critically, even if granted, it would not restore Chesir's

right to the property because New York law awarded full title to Chabbott when he purchased it at the foreclosure sale.

Absent a right of redemption, Chesir must now move to a separate argument. Seeking refuge in the fact that he has now satisfied his debt to the IRS, he claims that allowing the sale of his foreclosed property will work a double satisfaction against him. This contention is without merit. As the Court's order authorizing the foreclosure sale makes clear, the government is directed to distribute the proceeds of the sale held by the receiver as circumstances at the time of distribution warrant – including, if appropriate, entirely to Chesir. In material part, the order states:

> "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, in the event of a sale of the real property described herein, the United States, through a Court-appointed Receiver, shall distribute the proceeds of the sale as follows: First to satisfy the costs of the sale, including advertising, Receiver's compensation and other expenses (including but not limited to costs incurred to gain access to and to protect the real property from damage and to prepare the property for marketing and sale); second, to satisfy any and all outstanding real property taxes due and owing to defendant New York City Department of Finance; third to satisfy the United States' federal tax liens; and fourth, to satisfy any [and] all outstanding tax warrants held by the New York State Department of Taxation and Finance, and *fourth, and only in the event proceeds from the sale remain, after distributions are made as set forth above, to Pace Chesir.*"

Order of Foreclosure of Federal Tax Liens on Real Property of Pace Chesir and for Sale of Real Property, Dkt. No. 25 at 2-3 (emphasis added). The language of the order unmistakably and unambiguously directs that, in the current circumstance where Chesir has paid his IRS debt in full, the proceeds of the sale (minus the administrative expenses and payment of any other surviving liens as allowed by the order) be distributed entirely to him. Since none of this money will flow to any government entity, no double satisfaction of Chesir's original debt will occur.

Of course, Chesir would rather have his home instead of the proceeds from its sale, which leads to the final argument relied upon by both sides: the equities of the case. Chabbott, as previously discussed, has acquired legal right to Chesir's property by operation of New York law. Chabbott, for his argument on the equities, pounds the undeniable reality that he entered into the sale contract for Chesir's property in good faith on May 7, 2012 – now almost four years ago. At that time, he paid a deposit of $100,000, and has, as a consequence, forgone use of that substantial sum on other investments. Chabbott Affidavit, Dkt. No. 87, ¶ 2. In addition, he attests that he has spent over $18,000 in real estate attorney's fees, and still other amounts on litigation counsel to defend the title to the property he purchased. Chabbott Affidavit ¶ 9. His equitable claim to the property is a strong one.

In the end, though, the decision must rest on the controlling New York law, to which all equities must yield. The Court is not cold to Chesir's pain and distress over the loss of his home; at the same time, it must be observed that Chesir's fate is of his own doing. It was he who ignored his tax liabilities, who ignored this action at its initial filing and who undertook to settle with the IRS long after foreclosure had been authorized and the sale of his property had been consummated. It is, perhaps, a classic pyrrhic victory for Chesir. Although his Fabian approach finally yielded a monetary settlement Chesir found favorable, it came too late to preserve for him title to his home.

## Conclusion

For the foregoing reasons, Chabbott's motion to vacate the Court's January 20, 2015 order, which vacated the June 26, 2014 revised order approving the foreclosure sale, is granted. Chesir's motion to vacate the June 26, 2014 order is denied.

The government is directed to submit a revised order approving the foreclosure sale, setting a new date for Chesir to vacate the premises, providing for eviction if he fails to vacate, surcharging the costs of any eviction proceeding against Chesir's share of the proceeds and providing for the distribution of the balance of the proceeds from the sale in accordance with the November 8, 2011 order of foreclosure and sale.

The Clerk of Court is directed to maintain this action on the docket of closed cases for administrative purposes.

So Ordered.

Dated: Brooklyn, New York
       March 19, 2016

/s/ USDJ VITALIANO

ERIC N. VITALIANO
United States District Judge